UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BEST FLOORING, INC., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:12-cv-5-WTL-TAB |
| | ) | |
| M&I MARSHALL & ILSLEY BANK, | ) | |
|     Defendant. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS**

**I.      Introduction**

Plaintiff Best Flooring, Inc. was a subcontractor that performed work on homes constructed for Estridge Group. This litigation ensued after Plaintiff was not paid for its work on Estridge's homes. But Plaintiff is not suing Estridge, and therein lies the rub. Plaintiff has asserted a variety of claims against Defendant M&I Marshall & Ilsley Bank, which financed Estridge's construction projects. Defendant filed a Rule 12(b)(6) motion to dismiss Plaintiff's claims. [Docket No. 10.] For the reasons below, the Magistrate Judge finds that Plaintiff's allegations are problematic in several respects and that the motion to dismiss should be granted. However, Plaintiff should be given fourteen days to file an amended complaint to revive some of these claims, if appropriate.

**II.     Background**

The following complaint allegations are assumed to be true. Defendant had a loan agreement with Estridge Group, a home construction company, to finance Estridge's construction projects. [Docket No. 1, Ex. 1 at 6.] Plaintiff provided flooring materials,

1

installation, and warranty services to Estridge homes.  [*Id*. at 5.]  Prior to December 3, 2009, Estridge paid Plaintiff directly for flooring work it completed on Estridge projects.  [*Id*. at 6.]  On December 3, 2009, Defendant notified Estridge by letter of its intent to enforce a loan agreement provision requiring Estridge to submit to Defendant financial statements to support its loan draw requests.  [*Id*. at 6, 18–19.]  Based on Estridge's submissions, Defendant would then advance loans directly to Estridge's contractors, subcontractors, and material suppliers, including Plaintiff.  [*Id*.]  Plaintiff continued to work on Estridge's projects under the belief that Defendant would pay for the labor, materials, and warranty services Plaintiff provided.  [*Id*. at 7.]  Plaintiff claims that Estridge owes Plaintiff $152,086 in labor and material costs incurred before Defendant sent its December 3 letter, and $289,099.54 incurred afterward.  [*Id*. at 6–7.]  Plaintiff alleges unjust enrichment, third-party beneficiary, tortious interference with contracts, and bank control liability claims and seeks $441,185.54.  [*Id*. at 10.]

**III.    Discussion**

    *A.    Unjust enrichment*

Plaintiff claims that Defendant was unjustly enriched when homes for which Plaintiff provided labor, materials, and warranty services were sold and Defendant did not pay Plaintiff for its work.  "Indiana courts articulate three elements for [unjust enrichment] claims: (1) a benefit conferred upon another at the express or implied request of this other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment."  *Woodruff v. Ind. Family & Soc. Serv. Admin.*, 964 N.E.2d 784, 791 (Ind. 2012).

Plaintiff sufficiently alleges prongs two and three of an unjust enrichment claim.

Plaintiff asserts that after Defendant sent its letter to Estridge, Plaintiff continued to provide labor, materials, and warranty services on Estridge homes under the expectation that Defendant would pay for them. [Docket No. 1, Ex. 1 at 7.] Because of Plaintiff's work, Estridge completed its building projects and Defendant benefitted from Plaintiff's work when the homes sold. [*Id.*] Plaintiff also alleges that Defendant did not pay Plaintiff when homes were sold. [*Id.*] Therefore, "Defendant's retention of the benefit without paying [Plaintiff] for the labor, materials, and services provided would be unjust, since [Defendant] realized the benefit of the work when the homes were sold, as well as benefitting from the ongoing warranty protection provided by [Plaintiff]." [*Id.*] These allegations support the second and third prongs of an unjust enrichment claim.

However, Plaintiff's complaint does not satisfy the first element of an unjust enrichment claim because Plaintiff does not allege that Defendant expressly or impliedly requested the benefit Plaintiff conferred. Indiana law requires that the party providing the benefit does so at the express or implied request of the receiving party. *Woodruff*, 964 N.E.2d at 791. Plaintiff alleges that Defendant's letter notifying Estridge of Defendant's intent to make payments directly to subcontractors represents Defendant's implied request that Plaintiff continue to work on Estridge projects. [Docket No. 1, Ex. 1 at 7.] Plaintiff alleges that it relied upon Defendant's letter and continued to provide labor, materials, and services under the expectation it would be paid. [*Id.*]

There are several problems with Plaintiff's argument. Plaintiff has not alleged how the letter or its contents came to Plaintiff's attention. The letter is addressed to Michael J. Keller, Estridge CFO, and Plaintiff alleges only that "[i]t was [Defendant's] intention that Estridge make

the contents, if not the letter itself, available to subcontractors." [*Id*. at 18, 6.] The allegation that Estridge, not Defendant, communicated with Plaintiff does not support Plaintiff's claim that Plaintiff acted at Defendant's request. Additionally, Defendant's letter discusses only the terms of the loan agreement between Estridge and Defendant. It states that "each draw request made [by Estridge] on or after [December 1, 2009] must be accompanied with each of the items specified in Section 4.01(b)," including a list of expenditures, paid invoices, and other financial statements. [*Id*. at 18.] The letter then states that Defendant "will make advances under the Loan, if adequately supported in each Request, directly to each general contractor, subcontractor, and materialman identified in such Request." [*Id*. at 19.] This portion of the letter emphasizes Estridge's, not Plaintiff's, obligations to Defendant. Finally, Plaintiff's allegation that Defendant "intended the subcontractors to understand that [Defendant] would pay for labor and materials" does not allege how Defendant's intentions manifested a request to Plaintiff. [*Id*. at 6.] Even accepting Plaintiff's complaint allegations as true, the letter contains no express or implied request from Defendant to Plaintiff.

In opposing Defendant's motion to dismiss, Plaintiff argues that Indiana law does not require an express or implied request. [Docket No. 15 at 2.] Plaintiff cites *Coleman v. Coleman*, 949 N.E.2d 860, 868 (Ind. Ct. App. 2011), which states that "if a plaintiff cannot prove that the defendant expressly or impliedly requested the benefit, then it must be proven that provision of the benefit was necessary to protect the interest of the defendant or another." *Coleman* cites *Biggerstaff v. Vanderburgh Humane Soc., Inc.*, 453 N.E.2d 363 (Ind. Ct. App. 1993), which the court summarized:

> In *Biggerstaff*, the defendant owned dogs in very poor health that were seized by law enforcement and taken into custody by the plaintiff, the local Humane Society, and

> nursed back to health. Despite the lack of any express or implied request by the defendant that the Humane Society care for the dogs, we held that the Humane Society was entitled to restitution from the defendant for their care, noting that the dogs would have been returned to him if he had not been convicted of animal cruelty. In other words, the benefit provided by the Humane Society without request from the defendant was necessary to protect his interests, i.e., in the life of his dogs.

*Coleman*, 949 N.E.2d at 867 (citations omitted). Plaintiff's reliance on *Coleman* and *Biggerstaff* is not convincing. In *Biggerstaff* the health and welfare of dogs—indeed their very survival—hung in the balance, and the Humane Society rescued these animals from hardship and death by intervening after the dogs were seized by law enforcement. Moreover, the Humane Society was obligated by court order to care for the dogs while the defendant appealed his conviction for animal cruelty. In the case at bar the facts are much less compelling. Plaintiff merely provided labor and materials for houses under construction. While Plaintiff's actions certainly were beneficial, they were voluntarily provided to improve a portion of real property rather than necessary to protect animals' lives and well being or required by court order.

Moreover, whereas most communities are fortunate to have even a single Humane Society in operation, flooring contractors are much more prevalent. As the *Biggerstaff* court observed, "the Humane Society had no choice but to continue caring for the animals, thereby incurring substantial expenses." 453 N.E.2d at 364. Thus, the benefit provided by the Humane Society's intervention in *Biggerstaff*, as well as the underlying circumstances that necessitated that benefit, are not on par with the benefit provided by Plaintiff's continued work and the circumstances that prompted that work. Therefore, the construction work at issue in this case does not fall within *Coleman*'s narrow exception to the request requirement.

More on point is *Ritzert Co., Inc. v. United Fidelity Bank, F.S.B.*, 935 N.E.2d 756 (Ind. Ct. App. 2010). In *Ritzert*, construction contractors brought an unjust enrichment claim against

5

the bank that financed the project. *Id*. The contractors argued that the bank's failure to tell the contractors that the construction loan was fully dispersed and that the general contractor, the bank's lendee, was in default constituted the bank's implied request that the contractors continue to work. *Id*. at 760. The trial court granted summary judgment for the bank on the unjust enrichment claim and the appellate court affirmed because it found that the bank, "which made no request, express or implied, to the Contractors for their services did not otherwise owe a duty to the Contractors." *Id*. at 757. *Ritzert* therefore holds that a contractor's unjust enrichment claim against a bank must allege that the contractor provided services at the bank's express or implied request. *Id*. at 760; *see also McCullough Constr. Co., Inc. v. Gardner Denver, Inc.*, No. 1:09-CV-368-WTL-JMS, 2010 WL 1849229, *3 (S.D. Ind. May 6, 2010) ("Under Indiana law a party seeking to recover on a theory of [unjust enrichment] must demonstrate that a benefit was rendered to another at the express or implied request of such other party.").

Citing *Savoree v. Industrial Contracting & Erecting, Inc.*, 789 N.E.2d 1013, 1018 (Ind. Ct. App. 2003), Plaintiff also argues that in the construction context "courts have applied the more general rule requiring the subcontractor to establish only that it conferred a measureable benefit on the owner and that the owner's retention of the benefit without payment would be unjust" to establish an unjust enrichment claim. [Docket No. 15 at 4.] *Savoree* attributes this statement of Indiana law to *Encore Hotels of Columbus, LLC v. Preferred Fire Protection*, 765 N.E.2d 658 (Ind. Ct. App. 2002). However, the *Encore* court did not discuss the express or implied request requirement because it was never at issue. *Encore* found that the owner and builder of a construction project, acting as general contractor after firing the original builder, specifically asked the subcontractor to complete the work. *Id*. at 662. Therefore, neither

6

*Savoree* nor *Encore* supports Plaintiff's contention that a request is not a requirement of an unjust enrichment claim.

Because Plaintiff has not alleged facts to support that Plaintiff acted at Defendant's express or implied request, the unjust enrichment claim should be dismissed without prejudice. However, Plaintiff should be permitted fourteen days to amend its complaint if Plaintiff can appropriately allege facts to overcome this deficiency.

    *B.*    *Third-party beneficiary*

Plaintiff also claims that Defendant's letter makes Plaintiff a third-party beneficiary of Defendant's loan agreement with Estridge. Under Indiana law, for a contract to be enforceable by a third party,

> [I]t must clearly appear that it was the purpose or a purpose of the contract to impose an obligation on one of the contracting parties in favor of the third party. It is not enough that performance of the contract would be of benefit to the third party. It must appear that it was the intention of one of the parties to require performance of some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligation thus imposed.

*Cain v. Griffin*, 849 N.E.2d 507, 514 (Ind. 2006). In other words, "a third-party beneficiary contract is formed when (1) the parties intend to benefit a third party, (2) the contract imposes a duty on one of the parties in favor of the third party and (3) the performance of the terms of the contract renders a direct benefit to the third party." *Deckard v. General Motors Corp.*, 307 F.3d 556, 561 (7th Cir. 2002). The parties' intent "to bestow rights upon a third party must affirmatively appear from the language of the instrument when properly interpreted and construed." *Cain*, 849 N.E.2d at 514. "Such an intent may be demonstrated by specifically naming the third-party or by other evidence." *Barth Elec. Co. v. Traylor Bros., Inc.*, 553 N.E.2d 504, 506 (Ind. Ct. App. 1990). "The intent of the contracting parties to benefit the third party is,

of course, the controlling factor." *Id*.

Plaintiff alleges that Defendant's letter made Plaintiff and all other vendors working on Estridge projects third-party beneficiaries of Defendant's loan agreement with Estridge. [Docket No. 1, Ex. 1 at 8.] By agreeing to pay Estridge's subcontractors directly, Plaintiff asserts that Defendant assumed a duty "to pay subcontractors, including [Plaintiff], for labor and materials provided pursuant to any contracts with Estridge." [*Id*.] Defendant, on the other hand, argues that the loan agreement does not demonstrate Defendant's or Estridge's intention that the contract benefit another party.[1] [Docket No. 11 at 13.] Defendant also argues that the letter created no new duties to Estridge or Plaintiff and that the letter only informed Estridge that Defendant would pay the subcontractors directly based on Estridge's draw requests. [*Id*.]

Plaintiff has alleged that the Defendant-Estridge agreement was intended to benefit Plaintiff and all Estridge subcontractors. [Docket No. 1, Ex. 1 at 8.] Although Plaintiff is not a named party in the contract, intent to benefit a third party "may be demonstrated by specifically naming the third-party or by other evidence." *Barth*, 553 N.E.2d at 506. The "other evidence" that Plaintiff offers is Defendant's letter to Estridge. [Docket No. 1, Ex. 1 at 8.] It is difficult to see how the letter changes any duties or obligations of the contracting parties when it does not alter the original agreement terms. Nevertheless, the contracting parties' intent to benefit a third party can be a question of contract interpretation that is not appropriate for resolution by a

---

[1]Defendant attached to its motion to dismiss a copy of its loan agreement with Estridge. [Docket No. 11, Ex. 1.] "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). The loan agreement meets both requirements because Plaintiff's complaint specifically refers to the Defendant-Estridge contract and the terms are central to Plaintiff's claim that it was an intended third-party beneficiary to the contract. [Docket No. 1, Ex. 1 at 8.]

motion to dismiss. *Cain*, 849 N.E.2d at 514. Recognizing that discovery could shed some light on the issue of intent, a preclusive dismissal at the Rule 12(b)(6) stage would be unnecessarily rigid.

Even if Plaintiff were a third-party beneficiary, Plaintiff has not alleged that Defendant failed to comply with the terms of its contract with Estridge and thus harmed Plaintiff. *See Stevens v. Hous. Auth. of S. Bend*, 720 F. Supp. 2d 1013, 1029 (N.D. Ind. 2010) (dismissing on summary judgment a plaintiff's claim as a purported third-party beneficiary because she failed to show there was a breach); *AmericanTrust Fed. Sav. Bank v. Credit Suisse First Boston Corp.*, No. 3:07-CV-302-TS, 2008 WL 2062772, *4 (N.D. Ind. May 13, 2008) (granting defendant's motion to dismiss because plaintiff's claim under a third-party beneficiary theory did not "provide the grounds upon which its allegations of breach rest."). According to Defendant's letter, Estridge had to submit to Defendant "written construction draw requests," supported by expenditure lists, invoices, and other financial statements. [Docket No. 1, Ex. 1 at 18.] Defendant would then pay directly from the loan the subcontractors that Estridge owed money. [*Id.* at 19.] Plaintiff's complaint fails to allege that Estridge provided adequately-supported draw requests and thus does not "connect the dots" between the harm Plaintiff allegedly suffered and Defendant's failure to execute its duties under its agreement with Estridge. Accordingly, Plaintiff's claim under a third-party beneficiary theory fails because Plaintiff has not alleged that the requisite condition was satisfied. Therefore, Plaintiff's third-party beneficiary claim should be dismissed without prejudice, though again Plaintiff should be permitted fourteen days to amend the complaint if Plaintiff can appropriately connect the dots.

  C. *Tortious interference with contract*

Under Indiana law, a tortious interference with a contractual relationship claim requires "1) existence of a valid and enforceable contract; 2) defendant's knowledge of the existence of the contract; 3) defendant's intentional inducement of breach of the contract; 4) the absence of justification; and 5) damages resulting from defendant's wrongful inducement of the breach." *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994); *accord U.S. Rail Corp. v. Sturch*, No. 1:08-CV-585-WTL-DML, 2010 WL 468494, *5 (S.D. Ind. Feb. 4, 2010).

Plaintiff's complaint alleges the first, second, and third prongs of the tortious interference claim. Plaintiff pleads facts to support that it had a valid and enforceable contract with Estridge to provide flooring materials and installation on Estridge construction projects. [Docket No. 1, Ex. 1 at 5.] Plaintiff also asserts that Defendant was aware of the Plaintiff-Estridge agreement. [*Id.* at 6, 9.] Because of the nature of Estridge's work and because both the Defendant-Estridge agreement and Defendant's letter refer to subcontractors, this assertion is plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Additionally, Plaintiff alleges that Defendant "intentionally induced Estridge to breach the contract [with Plaintiff] by inserting itself into the construction process and controlling dissemination of the funds." [Docket No. 1, Ex. 1 at 9.] This allegation gives Defendant adequate notice of how Defendant allegedly induced Estridge's breach. *See Nat'l Fair Housing Allaince, Inc. v. S.C. Bodner Co., Inc.*, 1:10-CV-993-RLY-DML, 2012 WL 529941, *2 (S.D. Ind. Feb. 17, 2012) (explaining that the complaint must give the defendant "fair notice of the nature of the claim and the grounds upon which it rests.").

However, Plaintiff's claim fails because Plaintiff does not allege the fourth prong: an absence of justification for Defendant's interference with the Plaintiff-Estridge contract. Absence of justification in a tortious interference claim "is established only if the interferer acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another." *Bilimoria Computer Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 156–57 (Ind. Ct. App. 2005). Plaintiff alleges only that Defendant "had no justification for its inducement of the breach." [Docket No. 1, Ex. 1 at 9.] While Federal Rule of Civil Procedure 8(a)(2) requires only a short plain statement of a claim, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009). Plaintiff's statement hedges too closely to a threadbare recital, and Plaintiff does not allege facts to support its claim. Although Plaintiff alleges in its opposition to Defendant's motion to dismiss that Defendant's "intention was never to pay [Plaintiff], or at least to pay [Plaintiff] the bare minimum needed to keep [Plaintiff] working on the Estridge homes" and that Defendant "identified [Plaintiff] as a contractor for whom this illegal strategy would likely work," these allegations do not appear in the complaint. [Docket No. 15 at 9.] Additionally, the complaint does not allege that Defendant maliciously targeted Plaintiff exclusively to cause Plaintiff harm. Therefore, Plaintiff's claim for tortious interference with contract should be dismissed without prejudice, but with leave to amend within fourteen days as previously noted.

  *D.*  *Bank control liability*

Plaintiff asserts that Defendant exerted control over "the method, timing, and manner of payment to Estridge subcontractors" and thus has "inserted itself into the role of Estridge for all

intents and purposes." [Docket No. 1, Ex. 1 at 9.] Plaintiff argues that Defendant therefore is liable for Estridge's failure to pay Plaintiff. [*Id.*] Plaintiff refers to this claim as "bank control liability." Although Plaintiff delineates a disconcerting pattern of alleged misbehavior, any legal basis for the claim remains a mystery. Plaintiff's brief in opposition to Defendant's motion to dismiss does not cite any legal authority to support bank control liability as a recognized claim or a claim upon which relief can be granted. [*See* Docket No. 15 at 10.] As a result, Plaintiff's bank control liability claim should be dismissed with prejudice, and Plaintiff should not be given another opportunity to assert this flawed legal theory.

### IV.    Conclusion

For the above reasons, the Magistrate Judge recommends Plaintiff's unjust enrichment, third-party beneficiary, and tortious interference with contract claims be dismissed without prejudice. However, Plaintiff should be given fourteen days leave to amend the complaint, provided that Plaintiff can do so appropriately—meaning within the dictates of Rule 11's boundaries. The Magistrate Judge also recommends that Plaintiff's bank control liability claim be dismissed with prejudice. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Dated:   07/20/2012

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Steven M. Badger
BOSE MCKINNEY & EVANS, LLP
sbadger@boselaw.com

Oni N. Harton
BOSE MCKINNEY & EVANS, LLP
oharton@boselaw.com

John K. McDavid
TUCKER/HESTER ,LLC
john@tucker-hester.com

Troy Michael Miller
BOSE MCKINNEY & EVANS, LLP
tmiller@boselaw.com

James P. Moloy
BOSE MCKINNEY & EVANS, LLP
jmoloy@boselaw.com